484

## BALE v. OLIVER.

### No. 3941 Civil.

District Court, Alaska.
Second Division, Nome.
March 11, 1953.

Mildred R. Hermann, Juneau, Alaska, for plaintiff.

Quincy Benton, Nome, Alaska, for defendant.

COOPER, District Judge.

Plaintiff alleges that defendant purchased certain furs from her at the agreed price of $650, of which the sum of $208.25 had been paid, leaving a balance of $441.75 due and owing. Defendant in her answer does not deny these allegations, but alleges in a cross-complaint that there was another agreement between the parties by which the defendant and cross-complainant undertook to perform certain services at plaintiff's request. These services involved the restoration and enlargement of several early day pictures of Nome, which were in the possession of the plaintiff. Defendant further alleges that while there was no stipulated price for said services, the sum of $850 was a fair and reasonable price and prays for judgment in that amount.

The case was tried before the Court without a jury. The only evidence introduced was the testimony of the parties, together with certain exhibits. The plaintiff is engaged in the business of operating an enterprise consisting of a hotel, bar, and restaurant. The defendant conducts a photography shop. The defendant admitted the purchase of the furs from the plaintiff for the price of $650, of which $208.25 had been paid, so that as to this point there is no dispute between the parties. However, there is a marked difference between the construction placed by the parties upon the transaction involving the restoration and enlargement of the pictures in question. The original pictures were ten photographs taken in the year 1905 in Nome, Alaska, depicting several groups of people and buildings. These pictures were approximately 8 x 10 inches in size. There was al-

so introduced in evidence ten enlargements or murals of the originals, of the approximate size of 24 x 32 inches. Plaintiff admits that she gave the ten original pictures to the defendant with the view towards having enlargements made therefrom. However, she asserts that no definite commitment was made but rather the defendant was to submit proofs in order for plaintiff to ascertain whether enlargements would be desired, and that there was never any intention on her part that enlargements would be made until after the proofs had been submitted for her examination and approval. She testified further that at no time was a price for the services discussed.

Defendant contends, on the contrary, that at the time the original pictures were given to her by plaintiff, she was requested to make enlargements or murals; that there was never any discussion of proofs being submitted; that she informed the plaintiff that enlargements could be made; that as a matter of fact she had done work of a similar nature for the plaintiff involving a portrait of plaintiff when she was a young woman and in which the same general process was used as that required on the photographs in question. She testified further that on one occasion when she was contemplating a trip to the States, she contacted the plaintiff relative to payment for the furs, at which time plaintiff informed her that the matter could be settled upon completion of the photographic work, and that no definite price was discussed, although plaintiff suggested that when a final settlement was made she would probably be indebted to the defendant. During a period not long before the filing of this action, defendant worked for plaintiff as a waitress in her restaurant and defendant's husband was employed as a bartender. A short time prior to this action, defendant and her husband left the employ of the plaintiff and upon requesting their checks for their salaries, plaintiff brought up the question as to payment for the furs, at which time the defendant informed plaintiff that the pictures were ready, but that plaintiff did not at that time nor at any time since indicate any willingness to take the enlargements, nor for that matter to even look at them. It might

further be said that upon this occasion, plaintiff stopped payment on the salary checks of defendant and her husband which were in the total amount of $208.25. Defendant stated that she informed the Plaintiff on this occasion that the price for her work would be $850. Plaintiff denies that there was any discussion as to price. She does admit, however, that she made no effort to examine the enlargements in question. It is significant to note that in one part of plaintiff's testimony she states that, referring to defendant, "she was going to figure that the fur coats should pay for the pictures." Of further significance is the fact that so far as the record reflects, at no time did plaintiff make a demand upon defendant for the price of the furs until the incident involving the payment of defendant's and her husband's salaries at the time they left the employ of plaintiff. It is upon these controversial accounts of the transaction by the parties that the court is called upon to construe their agreement.

Defendant is a professional photographer with some ten years' experience. She testified in considerable detail as to the procedure involved in making the enlargements. It was necessary, according to her testimony, to make several contact prints of each of the originals. On the negative, she would retouch the faces and figures to the extent that the negative would accommodate and then proceed to make another print. This procedure was repeated as many as four separate times on many of the pictures. The retouching process involved as many as fifteen separate faces on some of the photographs and in general bringing out latent images which had faded with time. She charged a flat rate of $3 per face for the retouching, irrespective of the number of prints of the same photograph. Her charge for printing was $5 a copy for each 8 x 10 film and $20 for each mural. The process involved the use of a miniature air brush together with other small instruments used in the photography trade. When all of the work was performed so as to produce a final photograph from which a satisfactory enlargement could be made, defendant sent them to a firm outside for the actual enlargement work, not having the

486

proper equipment in her own shop for enlargements of that size. She expended the sum of $225 for this particular phase of the work. She testified that during the several months she had the photographs, she would work upon them intermittently for several hours on some occasions and for only a few minutes on others, but that the total time would amount to approximately two months' actual work. With the exception of the enlarging process done by the firm outside, she used her own materials and equipment.

It has been said in such cases as the one before us it is almost necessary for the court to place itself in the position of the parties in order to arrive at a determination as to their agreement. It has also been said that parties are far less likely to have been mistaken as to the meaning of their contract during the period when they are in harmony and a practical interpretation reflects that meaning than when subsequent differences have impelled them to resort to law and one of them then seeks an interpretation at variance with the practical interpretation of the provisions of the agreement. 12 Am.Jur. § 249 Contracts. We must then look to the circumstances as they existed before this action was brought. The construction of the agreement as urged by plaintiff is indeed a harsh one and should be avoided unless her interpretation is the only possible one. 17 C.J.S., Contracts, § 319; Restatement Contracts, § 236(a). It is always proper to resort to the situation of the parties and the surrounding circumstances at the time of the transaction in order to determine what agreement existed between the parties. New York Alaska Gold Dredging Co. v. Walbridge, 9 Cir., 76 F.2d 655. The testimony by defendant as to the various intricate steps taken by herself and the time, materials, and money expended by herself in producing the enlargements is not refuted. It is incredible to assume that the defendant would have expended the time and money involved had there not been a more definite understanding than that contended for by plaintiff for it can be readily seen that by the time the prints of the original photographs were ready for the enlargement process, the major portion of the work would have already been accomplished. Under plaintiff's interpretation of the agreement, the defendant would be in the position of performing that portion of her services without any hopes of compensation. Logic and reason must reject such an interpretation. Several other aspects of this case lend credence to the interpretation placed upon the agreement by the defendant. There is no indication whatsoever that plaintiff at any time made a demand upon defendant for payment of the furs prior to the incident involving the salary checks. The plaintiff on several occasions made inquiries of the defendant as to how she was coming with the pictures; that the defendant had performed a similar service for the plaintiff on a previous occasion and according to plaintiff's testimony defendant advised her at the time she received the original photographs that enlargements could be made therefrom.

Now we come to the question of compensation for the services performed by the defendant. In the absence of any express agreement or determination by the parties as to what services are reasonably worth, the party performing the same is entitled to recover on a quantum meruit basis, for the law will imply an agreement to pay the reasonable worth of services performed for another at the latter's special instance and request. 58 Am.Jur., Work and Labor, § 3; 17 C.J.S., Contracts, § 363. During the trial, there was no serious contention on the part of the plaintiff that the sum of $850 was not a fair and reasonable price, nor was there any contention that the work performed was not done in an artistic and workmanlike manner. Defendant testified as to the various steps taken by herself, the use of her materials, and the expenditure of her own funds. From this testimony it is apparent that $850 is a fair and reasonable price for her services. A comparison between the enlargements and the originals leaves no question but what the services performed were done in an artistic and skillful manner. I therefore find that defendant performed her services at the special instance and request of plaintiff, and that the sum of $850 is a fair and reason-

able price for such services. I further find that the sum of $441.75 is due by defendant to plaintiff on the furs. This amount, when deducted from $850, leaves a balance of $408.25 now due and owing the defendant by the plaintiff. Each party will stand his own costs. Findings and conclusions may be submitted accordingly.